# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

CIVIL ACTION NO. 3:14CV-298-JHM

IAN CORAM and GEORGE BRIGHT,
On behalf of THEMSELVES and
ALL Others Similarly Situated                                    PLAINTIFFS

VS.

SHEPHERD COMMUNICATIONS,
INC., TIME WARNER CABLE MIDWEST
LLC, and INSIGHT COMMUNICATIONS
COMPANY, L.P.,                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Shepherd Communications, Inc.'s

("Shepherd") [DN 23] and Insight Communications Company, L.P.'s motions to Compel

Arbitration [DN 27]. After an amended complaint was filed, the Defendants, including Time

Warner Cable Midwest LLC, filed identical motions to compel [DN 39 and 49]. Thus, the

motions at DN 23 and 27 are **DENIED** as **MOOT** and this opinion shall address the renewed

motions at DN 39 and 49.

## I. BACKGROUND

This action arises out of alleged violations of wage-and-hour laws under the Fair Labor

Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") by Shepherd, Insight, and Time Warner[1]

(collectively, "Defendants"). Plaintiffs Ian Coram ("Coram") and George Bright ("Bright")

worked for Shepherd, which Insight contracts with to provide cable and internet installation in

---

[1] Defendant Time Warner maintains that it does have a relationship with either Shepherd or Insight, and thus, Plaintiffs erroneously added it to this action.

businesses and homes.  Plaintiffs Coram and Bright, along with opt-in plaintiffs,[2] seek to pursue their claims as a class.  However, Defendants contend that the Independent Contractor Services Agreement ("Agreement") signed by Plaintiffs [Coram Contract, DN 23-3; Bright Contract, DN 23-4] not only prohibits class actions but also compels Plaintiffs to arbitrate their claims.

The relevant arbitration clause in this action is contained within Section 15 of the Agreement.  Part (a) of Section 15 states as follows:

> The parties agree that in the event of any dispute, claim, question, or disagreement (the "Dispute") between them or arising from or relating to this agreement or the breach thereof,  the parties hereto shall use their best efforts to settle the Dispute. To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. If they do not reach such solution within a period of 10 days, then, upon notice by either party to the other, all disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association . . . .

[Coram Contract, DN 23-3, at 6].  Part (b) provides, in relevant part, as follows:

> All parties specifically agree to use this arbitration procedure in place of any rights they otherwise would have had to submit to a court or jury any Dispute between them or arising from or relating to this agreement or the breach thereof. This Section specifically prohibits the Contractor from filing, participating in, or otherwise pursuing a class or collective action involving any claims with United States Department of Labor, the Kentucky Commission on Human Rights, the Kentucky Department of Labor, or any other federal, state or local civil rights or labor agency; claims arising under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. . . . .

Id.  Based on Section 15 of the Agreement, Defendants seek to dismiss Plaintiffs' Complaint, or alternatively stay this proceeding, and compel arbitration.

## II. ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., which generally applies to "a contract evidencing a transaction involving commerce to settle [a controversy] by arbitration,"

---

[2] Due to the contemporaneous filings of notices for opt-in plaintiffs with the drafting of this Opinion, the Court cannot accurately identify all those individuals involved with this action.

renders such arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Court is to "examine arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." Nestle Waters North America, Inc. v. Bollman, 505 F.3d 498, 503 (6th Cir. 2007). However, "the federal policy in favor of arbitration is not an absolute one." Id. at 504 (quoting Albert M. Higley Co. v. N/S Corp., 445 F.3d 861, 863 (6th Cir. 2006)) (internal quotations omitted).

Plaintiffs argue that the arbitration clause of the Agreement is unenforceable based on two grounds. First, Plaintiffs assert that the provision of the arbitration clause, which requires each party to pay for its own attorney's fees, violates the FLSA. Second, Plaintiffs contend that the costs-allocating provision contained in the arbitration section would prevent Plaintiffs from pursuing their claims under the FLSA. In response, Defendants agree that the attorney's fees provision violates the FLSA but explain that it can be severed from the Agreement. As for the costs-allocating section, Defendants argue that Plaintiffs fail to put forth any evidence that allocating costs between the parties would prevent Plaintiffs from pursuing their claims under the FLSA. Alternatively, Defendants believe that this provision can also be severed from the Agreement.

**A. Attorney's Fees**

Plaintiffs contend that Section 15(a)( ii) of the Agreement violates the FLSA. The second sentence of Subsection (a)(ii), states, "Each party shall be responsible for its own attorneys' fees." [Coram Contract, DN 23-3, at 6]. Under 29 U.S.C. § 216(b), if a plaintiff prevails in an FLSA action, then "[t]he court in such action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Defendants agree that the attorney's fees

provision in Section 15(a)(ii) violates § 216(b) and that it is an unenforceable provision. However, Defendants argue that the severability clause contained in Section 14 permits the Court to find Section 15(a)(ii) unenforceable without invalidating the whole Agreement.

Section 14 of the Agreement provides as follows:

> The parties agree that if a court of competent jurisdiction determines that any provision of this Agreement is too broad or extensive to permit enforcement to its full extent, then it is the intent of the parties that any such provision shall be enforced to the maximum extent permitted by Kentucky law. The parties also agree that a judicial determination regarding the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the remaining provisions of this Agreement, which shall continue to be given full force and effect.

[Coram Contract, DN 23-3, at 6]. Due to the policy of favoring arbitration, the Sixth Circuit instructs that "when the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement." Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 675 (6th Cir. 2003) (citing Great Earth Cos. v. Simons, 288 F.3d 878, 890–91 (6th Cir. 2002)). In fact, "Plaintiffs [do not] dispute that courts in this circuit have regularly severed unlawful costs and fee shifting requirements." [Pls.' Resp. in Opp'n, DN 67, at 19] (citing Noffsinger-Harrison, 2013WL 499210, *9 (E.D. Tenn. Feb. 7, 2013)). Instead, Plaintiffs assert that the language utilized in Defendants' severability clause forecloses the option of simply severing the attorney's fees' provision and finding the arbitration clause enforceable.

In opposing the application of the severability clause, Plaintiffs focus on the conditional language found in the first part of Section 14, which states that "if a court . . . determines that any provision of this Agreement is too broad or extensive to permit enforcement to its full extent, then . . . any such provision shall be enforced to the maximum extent permitted by Kentucky law." [Coram Contract, DN 23-3, at 6] Plaintiffs argue that since Section 15(a)(ii) cannot be

enforced, and Kentucky law prohibits arbitration agreements between employer and employees, then the arbitration agreement cannot be enforced. The Plaintiffs' argument completely ignores the second sentence of Section 14 which is clearly a severability provision. In determining a contract's plain meaning, the court is 'obligated to read the parts of the contract as a whole,' and when possible should embrace an interpretation that 'promote[s] harmony between . . . provisions.'" Nature Conservancy, Inc. v. Sims, 680 F.3d 672, 676 (6th Cir. 2012) (quoting L.K. Comstock & Co. v. Becon Constr. Co., 932 F.Supp. 948, 964 (E.D. Ky. 1994)). As a result, the Court finds that the attorney's fees' provision found in Section 15(a)(ii) is unenforceable as to Plaintiffs' FLSA claim but that the arbitration section remains valid based on the severability clause.

### B. Cost Allocation

"If . . . the splitting or sharing of the costs of the arbitral forum under a particular arbitration agreement effectively prevents the vindication of a plaintiff's statutory rights, those rights cannot be subject to mandatory arbitration under that agreement." Morrison, 317 F.3d at 658. The Sixth Circuit in Morrison adopted a case-by-case method of analyzing the enforceability of cost-splitting provisions in arbitration agreements. Under this approach, Courts are to deem a cost-splitting provision unenforceable "whenever it would have the 'chilling effect' of deterring a substantial number of potential litigants from seeking to vindicate their statutory rights." Id. at 661. Specifically, the Sixth Circuit provided the following guidance:

> [T]he reviewing court should define the class of such similarly situated potential litigants by job description and socioeconomic background. It should take the actual plaintiff's income and resources as representative of this larger class's ability to shoulder the costs of arbitration. . . . In considering the decision-making process of the typical member of a class, it is proper to take into account the typical or average costs of arbitration.

Id. at 663. In addition to considering the fees associated with arbitration, courts must "weigh the potential costs of litigation in a realistic manner," including the fact that plaintiffs often utilize the services of attorneys who work on a contingency fee basis. Id. at 664. Ultimately, Plaintiffs bear the burden of showing the cost-splitting provision would have a "chilling effect" on their ability to pursue their statutory claims. See Id. at 660.

In this case, Plaintiffs identify the cost-allocating provisions of Section 15(a)(ii) as having a chilling effect on the vindication of their statutory rights. Specifically, Plaintiffs complain of the large filing fee which must be paid by them along with the risk of having to pay all or part of the Arbitrator's fee. According to the fee structure provided under the American Arbitration Association's ("AAA") Commercial Arbitration Rules, an initial filing fee of either $745 or $845 for claims under $10,000 is required to be paid by the Plaintiff. American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures 40, 43 (2013); [Exhibit 4 AAA Commercial Arbitration Rules, DN 67-2, at 40, 43]. As for an estimate of the arbitrators' fees, Plaintiffs indicate that there is very little data for Kentucky, but they provide the name of one arbitrator who charges $250 per hour. [Pls.' Resp., DN 67, at 11].

Plaintiffs submit data concerning seven individuals' monthly income and expenses to support their argument that they cannot afford arbitration. Among those selected, the data shows a significant variation of income, including one individual who is unemployed. [Pls.' Resp., DN 67, at 12-14]. Generally, it appears as though the Plaintiffs fall within the category of unskilled labor and make approximately between $16,800[3] and 32,800[4] a year. Considering Plaintiffs' incomes and expenses, they possess a marginal amount of disposable income. In fact, each of

---

[3] This estimate comes from opt-in Plaintiff Chris Ennis who makes about $1200 to $1400 a month. [Pls.' Resp., DN 67, at 14].
[4] This estimate comes from opt-in Plaintiff Jacob Dunham who makes $15.78 per hour. [Pls.' Resp., DN 67, at 13].

the seven individuals selected to represent the group attested to the fact that it would be difficult for them to pay for arbitration.

Initially, it should be noted that the Agreement itself does not split or allocate costs between the parties. It simply provides that the Arbitrator will ultimately allocate the costs and fees of arbitration, including the initial filing fee which the Arbitration Rules require the Plaintiff to pay up-front. Therefore, in deciding whether the costs of arbitration are so high as to deter a substantial number of potential plaintiffs from seeking the vindication of their statutory rights, the Court will first consider the chilling effect of having to pay the filing fee up front.

Potential plaintiffs must pay a filing fee whether in this Court or in arbitration. The fee is indeed higher for arbitration, but not terribly more expensive. The Court finds that the difference between the two filing fees is not significant enough to have a chilling effect on similarly situated litigants, especially given that this cost may eventually be recovered.

Of course, in arbitration, the Plaintiffs may not pursue their claims collectively as the Agreement contains a class action waiver. This makes arbitration considerably more expensive for the group as a whole, but the Supreme Court has held that such waivers are enforceable despite the added cost. In American Exp. Co. v. Italian Colors Restaurant, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013), the Supreme Court "consider[ed] whether a contractual waiver of class arbitration is enforceable under the [FAA] when the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery." Italian Colors Restaurant, 133 S. Ct. at 2307. The Court found the class action waiver enforceable because "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." Id. at 2311. Commenting further on the "effective vindication exception" to the enforceability of arbitration agreements, the Court noted that the exception

"would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." Id. at 2310-11. Thus, the Court will next consider whether the risk of being saddled with all or a portion of the administrative fees is so high as to make the arbitral forum impracticable for the potential Plaintiffs.

Unlike the filing fee, if there is any chilling effect as a result of this Arbitration Agreement, it comes from the possibility that the Arbitrator will ultimately require a potential Plaintiff to pay all or a portion of the Arbitrator's fee. In assessing this risk and the potential chilling effect, the Court believes that <u>Green Tree Financial Corp. v. Randolph</u>, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) is relevant. In <u>Green Tree</u>, the arbitration agreement was silent as to the allocation of arbitration costs. <u>Green Tree</u>, 531 U.S. at 90-91. The record did not show that the plaintiff would bear those costs if she went to arbitration, and as a result, the Court held that the arbitration agreement could not be invalidated because "[t]he "risk" that [a claimant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." Id. Likewise, in this case, with the exception of the initial filing fee, the Plaintiffs cannot show that they will be made to bear the costs of arbitration. The party seeking to invalidate an arbitration agreement on grounds that arbitration is prohibitively expensive bears the burden of showing the likelihood of incurring those prohibitive costs. Id. at 92. Other than showing that one arbitrator in the Lexington area charges $250 an hour, the Plaintiffs have simply failed to show that they will incur any costs in arbitration. It is just as likely that they will not. Given this uncertainty, the risk faced by the Plaintiffs is too speculative to justify invalidating the Arbitration Agreement.

In a case such as this, where the allocation of costs is to be determined by the Arbitrator, it seems an impossible burden for the Plaintiff to show a likelihood of being saddled with

prohibitive costs without engaging in speculation. However, as in <u>Green Tree</u>, "how detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss" because here there was no showing at all. <u>Green Tree</u>, 531 U.S. at 92.

Based on the foregoing reasoning, the Court concludes that the Agreement is enforceable and the Plaintiffs must arbitrate their claims. Finally, Defendants ask the Court to dismiss, or in the alternative, stay proceedings on Plaintiffs' claims. "[T]he Federal Arbitration Act (FAA) provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." <u>Javitch v. First Union Securities, Inc.</u>, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3, 4). The FAA does not explicitly preclude a Court from dismissing an action where the claims have been referred to arbitration. In fact, the Sixth Circuit has taken the position that "litigation in which all claims are referred to arbitration may be dismissed." <u>Hensel v. Cargill, Inc.</u>, No. 99–3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999); <u>see also</u> <u>Green v. Ameritech Corp.</u>, 200 F.3d 967, 973 (6th Cir. 2000) (quoting <u>Alford v. Dean Witter Reynolds, Inc.</u>, 975 F.2d 1161 (5th Cir. 1992)) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."). However, the record reflects that Defendants have not produced contracts for all of the opt-in Plaintiffs at this time. Therefore, the action is stayed pending a determination as to whether any Plaintiffs worked for Defendants but were not under a contract requiring arbitration. For those employees in which a contract exists, they must pursue their claims in arbitration.

### III. CONCLUSION

For the foregoing reasons, Defendant Shepherd Communications, Inc.'s ("Shepherd") [DN 39], Defendant Time Warner Cable Midwest, LLC's ("Time Warner") [DN 49], and Insight Communications Company, L.P.'s motions to Compel Arbitration [DN 49] are **GRANTED**. The action is **stayed**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

September 23, 2014

cc: counsel of record