*Stucker*

# INDEPENDENT CONTRACTOR SERVICES AGREEMENT

This Agreement is entered into between Shepherd Communications, Inc. ("Shepherd"), and the undersigned independent contractor ("Contractor").

WHEREAS, Shepherd performs cable installation services and other services for one or more companies that provide cable services and/or other services (the "Company"); and

WHEREAS, Contractor desires to obtain cable installation projects and business from Shepherd and Shepherd desires to contract with Contractor, subject to the terms of this Agreement;

NOW THEREFORE, in consideration of the mutual representations, covenants and promises contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Services. Contractor will provide cable installation services to Shepherd. Contractor shall furnish all labor, tools, equipment, transportation, and incidental materials necessary to complete the work. The work of Contractor pursuant to this Agreement does not involve construction and further does not involve any building, clearing, filling excavation, or substantial improvement in the size or use of any structure or the appearance of any land. Contractor represents and warrants to Shepherd that Contractor holds or has applied for a federal employer identification number unless Contractor is a sole proprietor who is not required to obtain a federal employer identification number under state or federal requirements. Contractor's federal employer identification number, if applicable, has been provided to Shepherd. If Contractor has applied for a federal employer identification number, Contractor shall provide it to Shepherd immediately upon it being issued to Contractor.

2. Work Assignments. To the extent that Shepherd decides to utilize the services of Contractor, Shepherd shall (directly or through the Company, at Shepherd's option) provide to Contractor a work order describing the location, providing other relevant contact information, and describing the type of work to be performed. Contractor may decline job assignments and is not required to maintain a set schedule, other than being available to complete any job assignments accepted by Contractor Monday through Sunday of each week. Contractor is free to come and go at Contractor's discretion if he has not accepted an assignment. Contractor may contract with other businesses as Contractor deems appropriate and is not limited to performing assignments for Shepherd. Once Contractor has accepted one or more assignments, Contractor shall timely complete said assignments pursuant to the terms and conditions of this Agreement and may not thereafter refuse to fully complete the accepted assignments. The Contractor agrees to perform specific work for the specific amounts set forth in this Agreement. Shepherd shall be under no obligation to assign any work to Contractor.

3. Performance. Contractor shall perform the work in a timely manner and all work shall be done in a good and workmanlike manner. Contractor acknowledges and agrees that time is of the essence in the completion of any accepted job assignments. Contractor shall use its best efforts to complete all work during regular business hours. Contractor shall comply with all

specifications of Shepherd and the Company regarding all assignments. Contractor shall keep the area in which the work is being performed clean and shall return the area to the condition it was in prior to commencement of the work once the work is completed, including the removal of any debris and excess materials. However, the manner and means of performance of the work, including the technique, sequence, procedures, selection and assignment of Contractor's employees shall be subject to Contractor's exclusive discretion, supervision, and control.

    4.    <u>Qualifications</u>. Contractor represents, warrants, and covenants that: a) Contractor has the experience, expertise, resources, intent, and ability to fully and properly perform Contractor's obligations hereunder; b) Contractor will use Contractor's best efforts to fully and properly perform all of Contractor's obligations hereunder; c) Contractor is familiar with the applicable specifications and industry standards for performing cable installations, including new connects, re-connects, maintenance, and repair; and d) Contractor, and any of Contractor's employees involved in cable installation services, shall meet with Shepherd not less than once every ___Month___, at a time and place mutually designated by Shepherd and Contractor, to discuss the specifications required by Shepherd's clients and other general installation details necessary for proper completion of the assignments by Contractor.

    5.    <u>Payment</u>. Contractor acknowledges and agrees to submit invoices on a weekly basis for any completed job assignments. Shepherd will pay Contractor no later than forty-five (45) days after submission of each invoice for job assignments that have been completed and invoiced by Contractor, subject to Shepherd's right to charge-back and set-off as described below. The payments due hereunder are on a per-job basis and not on any other basis and are subject to the setoff provisions and retainer set forth elsewhere in this Agreement. Payment is contingent upon Contractor properly completing and reporting completed job assignments to Shepherd, including Contractor completing all forms or other documents or information reasonably requested by Shepherd that document the completion of the job assignment and other payment details. Contractor will accurately represent the work completed and will accurately classify the work completed by any job assignment code required by Shepherd. Contractor acknowledges and agrees that Shepherd may determine, in Shepherd' sole discretion, that a particular job assignment(s) has been performed in an unsatisfactory manner. Upon a determination that a particular job assignment has been performed in an unsatisfactory manner, that particular job assignment(s) will be charged back to Contractor and Contractor will not receive payment for that job assignment. In the event that Contractor has already been paid for a particular job assignment(s), Shepherd may set-off such amounts from any other payments that Shepherd owes to Contractor as anticipated in this Section 5 of this Agreement. In addition, in the event that equipment or other materials that are owned by any customer of Shepherd (or by Shepherd) are not returned or otherwise properly accounted for by Contractor, either at the completion of a particular job assignment or upon the termination of this Agreement, the value of such equipment or other materials will be charged back to Contractor and such value is also subject to Shepherd's right to set-off against any payments that Shepherd otherwise owes to Contractor.

Contractor acknowledges and agrees that Contractor is soley responsible for the principal expenses related to the work that Contractor performs pursuant to this Agreement. Contractor acknowledges that Contractor may realize a profit or suffer a loss in connection with performing each job assignment and that Contractor's success or failure depends largely on Contractor's

management of time and the relationship of business receipts to expenditures incurred by Contractor. Contractor represents and warrants to Shepherd that Contractor has or will have continuing and recurring business liabilities and obligations.

6. <u>Term</u>. The term of this Agreement will commence on the date hereof and, unless otherwise terminated pursuant to this section, will end on the date that is one year from the date of this Agreement. Unless terminated pursuant to this section, this Agreement shall automatically renew for successive one-year periods. This Agreement may be terminated by either party, with or without cause, upon ten (10) days written notice to the other party. Termination of this Agreement shall not affect any ongoing obligations pursuant to this Agreement, including the obligation to remedy work pursuant to the Warranty. Shepherd may terminate this Agreement immediately and without any obligation to provide written notice to Contractor in the event that Shepherd determines, in its sole discretion, that (1) Contractor has made a material breach of any provision of this Agreement or (2) Contractor is guilty of neglect or willful misconduct in performing any of the duties required by this Agreement.

7. <u>Independent Contractor/No Agency</u>. Contractor will perform the work as an independent contractor of Shepherd, and this Agreement will not be construed to create a partnership, joint venture or employment relationship between Contractor and Shepherd. Contractor acknowledges and agrees that Contractor will retain full and exclusive control over the manner in which Contractor performs the work. Contractor acknowledges and agrees that Contractor will not be entitled to traditional employment benefits awarded to Shepherd's employees, including but not limited to overtime pay, workers compensation, unemployment, retirement, or health insurance. Contractor shall have no authority to enter into any agreements binding upon Shepherd, or to create any other obligations on the part of Shepherd, and further agrees that Contractor is in no way Shepherd's agent.

8. <u>Compliance with Laws</u>. Contractor will: a) comply with all federal, state and local laws, ordinances, regulations and orders with respect to its performance of the job assignments, and b) pay all fees and federal, state and local taxes applicable to Contractor's business as the same shall become due. Contractors will provide Shepherd with such documents and other supporting materials as Shepherd may reasonably request from time-to-time to evidence Contractor's continuing compliance with this section. Contractor acknowledges and agrees that Shepherd is neither paying nor accruing any employment-related taxes with respect to Contractor because Contractor is not an employee of Shepherd. Contractor is solely responsible for the payment and/or accrual and reporting of all employment-related taxes.

9. <u>Worker's Compensation and General Liability Insurance Coverage</u>. Before commencing any work assignment under this Agreement, and as a condition precedent to any payment by Shepherd to Contractor under this Agreement, the Contractor (and all of Contractor's subcontractors) shall purchase and maintain insurance in conformance with the provisions contained in this Section 9. This insurance will provide a defense and indemnify Shepherd, but only with respect to liability for bodily injury, property damage and personal and advertising injury caused in whole or in part by Contractor's acts or omissions or the acts or omissions of those acting on the Contractor's behalf. Proof of this insurance shall be provided to the Contractor before any work commences, as set forth below. To the extent that the Contractor

3

subcontracts with any other entity or individual to perform all or part of the Contractor's work assignment(s), the Contractor shall require its other sub-contractors to furnish evidence of equivalent insurance coverage, in all respects, terms and conditions as set forth herein, prior to the commencement of work by said subcontractor. In no event shall the failure to provide this proof, prior to the commencement of any work, be deemed a waiver by Shepherd of Contractor's or and subcontractor's insurance obligations set forth herein.

In the event that the insurance company(ies) issuing the policy(ies) required by this Section 9 deny coverage to Shepherd, Contractor, or any subcontractor, Contractor and its subcontractors will, upon demand by Shepherd, defend and indemnify Shepherd at the Contractor's (and its subcontractor's) expense.

Contractor must maintain the required insurance with a carrier rated A- or better by A. M. Best. The Contractor shall maintain at least the limits of liability as set forth below:

**Commercial General Liability Insurance**
$1,000,000 Each Occurrence Limit (Bodily Injury and Property Damage) $2,000,000 General Aggregate per Project
$2,000,000 Products & Completed Operations Aggregate
$1,000,000 Personal and Advertising Injury Limit
**Business or Commercial Automobile Liability Insurance**
$1,000,000 combined single limit per accident
**Workers' Compensation and Employers' Liability Insurance**
$1,000,000 Each Accident
$1,000,000 Each Employee for Injury by Disease
$1,000,000 Aggregate for Injury by Disease
**Excess or Umbrella Liability (to overlay Employer's Liability, Automobile Liability and Commercial Liability coverages)**
$2,000,000 occurrence/aggregate

Shepherd, along with its respective officers, agents and employees, shall be named as additional insureds for Ongoing Operations and Products/Completed Operations (using endorsements CG 2033 & CG 2037 or equivalent) on the Contractor's and any subcontractor's Commercial General Liability Policy, which must be primary and noncontributory with respect to the additional insureds. This insurance shall remain in effect for the period that begins prior to the commencement of any work assignments for Shepherd and continuing through the final conclusion of all work assignements performed under this Agreement. It is expressly understood by the parties to this Agreement that it is the intent of the Parties that any insurance obtained by Shepherd is deemed excess, non-contributory and not co-primary in relation to the coverage(s) procured by the Contractor, any of its subcontractors or any of their respective consultants, officers, agents, subcontractors, employees or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of the aforementioned may be liable by operation of statute, government regulation or applicable case law. To the fullest extent permitted by applicable state law, a Waiver of Subrogation Clause shall be added to the General Liability, Automobile and Workers Compensation policies in favor of Shepherd, and this clause shall apply to the Shepherd's officers, agents and employees, with respect to all work assignments during the policy term. Prior to commencement of work on any individual work assignment, Contractor shall submit a Certificate of Insurance in favor of Shepherd and an Additional

4

Insured Endorsement (in a form acceptable to Shepherd) as required hereunder. The Certificate shall provide for thirty (30) days' notice to Shepherd for cancellation or any change in coverage. Copies of insurance policies shall promptly be made available to Shepherd upon request. In addition, Contractor and any of its subcontractors shall promptly execute any documents necessary to provide Shepherd the authority to independently confirm the existence of the insurance required by this Section 9 from Contractor's (or any subcontractor's) insurance company and/or agent, including but not necessarily limited to the Authorization attached to this Agreement as Exhibit _A.

As an alternative to Contractor obtaining its own coverage as anticipated by this Section 9, Shepherd may provide to Contractor the opportunity for Contractor to obtain the insurance required above in conjunction with Shepherd's own policies. Should Shepherd provide to Contractor such an opportunity, the cost of such insurance obtained shall be reimbursed by Contractor to Shepherd by Shepherd withholding 10% of the gross proceeds from all of the invoices submitted by Contractor under Section 5 of this Agreement. In the event that Shepherd does provide such an opportunity, Contractor agrees to provide all necessary information regarding any employees of Contractor within 5 days of the hiring of any employee by Contractor. Contractor further agrees to timely cooperate with Shepherd in the completion of any documents necessary to obtaining and/or maintaining such insurance coverage and to comply with all of the requirements set forth in the entirety of this Section 9.

10. Uniforms/Signage. Contractor acknowledges and agrees that because Contractor will be performing cable installation services at and within the homes of the general public on the job assignments from Shepherd, it is necessary for the safety of the general public that Contractor and its employees properly identify themselves as providing cable installation services on behalf of Shepherd's customers and clients. Contractor, therefore, agrees (1) to purchase from Shepherd and (2) to wear on all job assignments clothing that adequately identifies Contractor and its employees to the general public as independent contractors providing cable installation services on behalf of Shepherd's customers and clients. Shepherd will make such clothing available for purchase by Contractor as needed. In addition, Contractor agrees to provide signage on all vehicles that Contractor or any of Contractor's agents or employees use to perform job assignments that readily identifies Contractor as an independent contractor providing cable installations services for Shepherd and/or Shepherd's customers and clients. All such signage is subject to approval by Shepherd.

11. Indemnification. All work performed by the Contractor pursuant to this Agreement, including preparing to perform the work, shall be at the sole risk of Contractor. Contractor indemnifies, agrees to defend, and holds Shepherd harmless from any damage, claim, loss, fee or liability arising out of: a) Contractor's failure to perform under this Agreement or b) from injuries or death of persons (Contractor and Contractor's employees included) and damage to property, arising directly or indirectly out of the obligations herein undertaken or out of the operations conducted by Contractor. Shepherd shall be entitled to set-off and retain any payment due to Contractor under this Agreement for any amounts due to Shepherd under this indemnification section.

12. Shepherd's Clients, Customers, and Accounts. Shepherd retains all rights relative to its clients, customers, and accounts. Contractor acknowledges that Contractor has no vested

right in any Shepherd sales, revenues, programs, territories, or clients and customers other than the compensation specified in this Agreement. Contractor acknowledges and agrees that Shepherd is entitled to invoice the Company and/or any other party for the work performed by Contractor and is further entitled to receive all monies due from the Company and/or any other party for the work performed by Contractor. Contractor agrees not to invoice, receive, or otherwise seek to collect monies from the Company or any other person (including the Company's customers) for the work or otherwise interfere with Shepherd's relationship(s) with the Company.

13. Choice of Law. The laws of the state of Kentucky shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties hereto.

14. Severability. The parties agree that if a court of competent jurisdiction determines that any provision of this Agreement is too broad or extensive to permit enforcement to its full extent, then it is the intent of the parties that any such provision shall be enforced to the maximum extent permitted by Kentucky law. The parties also agree that a judicial determination regarding the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the remaining provisions of this Agreement, which shall continue to be given full force and effect.

15. Arbitration.

(a) The parties agree that in the event of any dispute, claim, question, or disagreement (the "Dispute") between them or arising from or relating to this agreement or the breach thereof, the parties hereto shall use their best efforts to settle the Dispute. To this effect, they shall consult and negotiate with each other in good faith and, recognizing their mutual interests, attempt to reach a just and equitable solution satisfactory to both parties. If they do not reach such solution within a period of 10 days, then, upon notice by either party to the other, all disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules (the "Rules"), insofar as such Rules are not inconsistent with the provisions expressly set forth in this Agreement pursuant to the following procedures:

(i) All proceedings before the arbitrator shall be held in Lexington, Kentucky. There shall be one arbitrator appointed in accordance with the Rules.

(ii) The costs and fees of the arbitration, not including attorneys' fees of the parties, shall be allocated by the arbitrator. Each party shall be responsible for its own attorneys' fees.

(iii) The award rendered by the arbitrator shall be final and judgment may be entered in accordance with applicable law and in any court having jurisdiction thereof.

(b) All parties specifically agree to use this arbitration procedure in place of any rights they otherwise would have had to submit to a court or jury any Dispute between them or arising from or relating to this agreement or the breach thereof. This Section specifically prohibits the Contractor from filing, participating in, or otherwise pursuing a class or collective action involving any claims with United States Department of Labor, the Kentucky Commission

6

on Human Rights, the Kentucky Department of Labor, or any other federal, state or local civil rights or labor agency; claims arising under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq.; Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-5, et seq.; the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, as amended by the Older Workers' Benefit Protection Act, P.L. 101-433; the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.; the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq.; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq.; the Federal Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.; the Equal Pay Act of 1963, as amended, 29 U.S.C. §§ 206(d) and 216(b); the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301, et seq.; the National Labor Relations Act, 29 U.S.C. § 151 et seq.; the Labor Management Relations Act, 29 U.S.C. §141 et seq.; the Kentucky Civil Rights Act, KRS 344.010, et seq.; the Kentucky Equal Pay Act, KRS 337.420 to 337.433; the Kentucky Equal Opportunities Act, KRS 207.140 to 207.240; the Kentucky Wages and Hours Act, KRS 337.010, et seq.; Kentucky's Workers' Compensation Retaliation statute, KRS 342.197; the Kentucky Occupational Safety and Health Act, KRS 338.011, et seq.; Kentucky's "catch-all" damages statute, KRS 446.070; federal, and state and local Occupational Safety and Health Laws. However, the class action waiver does not waive any Section 7 rights under the National Labor Relations Act, if applicable, in any action before the National Labor Relations Board.

16. Modification or Amendment. No amendment, change or modification of this Agreement shall be valid unless in writing signed by both Contractor and Shepherd.

17. Entire Understanding. This Agreement and any exhibit attached or referenced herein shall constitute the entire understanding and agreement of the parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect.

18. Notices. Any and all notices, demands, or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly given or made to another party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service. If such notice, demand or other communication is given by mail, such notice shall be conclusively deemed given five days after deposit thereof in the United States mail addressed to the party to whom such notice, demand or other communication is to be given as follows:

        If to the Contractor:    [name]
                                          [street address]
                                          [city, state, zip]

        If to Shepherd:        Eric Shepherd, President
                                          115 Eisenhower Court
                                          Nicholasville, Ky. 40356

Any party hereto may change its address for purposes of this paragraph by written notice given in the manner provided above.

CONTRACTOR REPRESENTS, ACKNOWLEDGES, AND AGREES THAT CONTRACTOR HAS READ AND UNDERSTANDS THIS AGREEMENT, WAS PROVIDED WITH AN OPPORTUNITY TO CONSULT WITH COUNSEL, AND THAT CONTRACTOR INTENDS TO BE LEGALLY BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT. CONTRACTOR ACKNOWLEDGES AND UNDERSTANDS THAT THE CONTRACTOR HAS ALSO SIGNED, AND IS BOUND BY, A WARRANTY AND INSURANCE AGREEMENT, ALL OF WHICH ARE A PART OF THIS AGREEMENT AND ARE ENFORCEABLE AS IF FULLY RESTATED HEREIN.

IN WITNESS WHEREOF the undersigned have executed this Agreement as of the day and year first written above. The parties hereto agree that facsimile signatures shall be as effective as if originals.

SHEPHERD COMMUNICATIONS, INC.

By: _Cathy Sonda_ (signature)

Its: _H-R_

Date: _1-3-13_

and

_____ Chris Stucker
CONTRACTOR

Date: _1/3/13_

8